UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cr-00006-JMS-CMM |
| | ) | |
| CHRISTOPHER S. CRITCHLOW, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

On May 26, 2020, defendant Christopher Critchlow, an inmate at USP Terre Haute, filed an emergency motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 36. Mr. Critchlow has served most of his 92-month sentence and is scheduled for release on July 13, 2021. He suffers from underlying health conditions that increase or may increase his risk of severe illness from COVID-19. His three children—ages 11, 9, and 8—live with their mother, and the state of Indiana has filed a Children in Need of Services ("CHINS") petition as a result of the mother's drug abuse and neglect. For the reasons explained in this Order, Mr. Critchlow's motion for compassionate release is **granted**.

### I.
### BACKGROUND

#### A. Offense Conduct, Criminal History, and Medical History

Mr. Critchlow is 39 years old. Dkt. 29, p. 2. On October 20, 2015, he pleaded guilty to a sole count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 33. His criminal conduct is summarized in the Presentence Investigation Report, dkt. 29, paras. 5-9, and recited in the Government's Response in Opposition to Motion for Compassionate Release. Dkt. 50, p. 2.

Prior to his arrest for this charge, Mr. Critchlow had been convicted of felony auto theft and felony escape (age 16), felony possession of a firearm by a serious violent felon (age 18), felony auto theft (age 18), misdemeanor criminal recklessness and reckless driving (age 22), misdemeanor criminal trespass (age 22), misdemeanor conversion (age 22), felony possession of anhydrous ammonia (age 22), felony possession of a controlled substance (age 23), tampering with anhydrous ammonia (age 23), felony possession of chemical reagents and precursors (age 25), and felony domestic violence (age 27). Dkt. 29, paras. 27-37.

Pursuant to the Plea Agreement, the Court sentenced Mr. Critchlow to 92 months imprisonment at the Bureau of Prisons ("BOP") followed by 1 year of supervised release. Dkt. 33, pp. 2-3. He is scheduled to be released on July 13, 2021, after serving 76.4 actual months. To date, he has served approximately 66 actual months, or 86%, of this sentence.

Mr. Critchlow has used his time at BOP constructively. He has not been charged with any disciplinary violations. Dkt. 49-1. He has completed a significant amount of continuing education classes. Dkt. 49-2. He completed substance abuse treatment in 2017. Dkt. 49-3. And he has completed 5,843 hours of an 8,000-hour shop tailor apprenticeship. Dkt. 49-4.

Mr. Critchlow has two health conditions that place him at an increased risk of serious illness from COVID-19.

First, Mr. Critchlow suffers from obesity. He is 6' 1" and weighs 234.8 pounds. His body mass index ("BMI") is 30.9. The Government concedes that Mr. Critchlow has been consistently obese throughout his incarceration at BOP and that he attends chronic care appointments with prison medical staff. Dkt. 50, p. 4 (citing dkt. 50-3, pp. 124, 302, 364). The Centers for Disease

Control and Prevention ("CDC") Guidelines indicate that people of any age with a BMI of 30 or higher are at an increased risk of severe illness from COVID-19.[1]

Second, Mr. Critchlow is a former smoker. Before quitting in 2017, he smoked about one pack of cigarettes every day for 22 years. The CDC Guidelines indicate that people of any age who are former cigarette smokers may be at an increased risk of severe illness from COVID-19.[2] According to researchers at the University of California—San Francisco, a meta-analysis of studies that included 11,590 COVID-19 patients suggests that the risk of disease progression in those who currently or previously smoked cigarettes was nearly double that of non-smokers.[3]

Mr. Critchlow's three children live with their mother. The state of Indiana filed a CHINS petition on June 9, 2020, alleging that the children's physical or mental condition is seriously impaired or seriously endangered as a result of the mother's drug abuse and neglect and is unlikely to be improved without coercive court intervention. Dkt. 49-6. According to the petition, the mother has admitted using drugs in the home when she is supposed to be supervising her and Mr. Critchlow's children. *Id.* at 2-3. The mother also admitted that an unknown male overdosed in the home in the presence of her and Mr. Critchlow's children. *Id.* at 3. At the time of Mr. Critchlow's reply brief in this case, the children had not been removed from the mother's home, and a fact-finding hearing on the CHINS petition is scheduled for April 2021.[4] Dkt. 51, p. 8.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] *Id.*
[3] https://www.ucsf.edu/news/2020/05/417411/smoking-nearly-doubles-rate-covid-19-progression#:~:text=In%20a%20meta%2Danalysis%20of,double%20that%20of%20non%2Dsmokers.
[4] Counsel's opening brief in support of Mr. Critchlow's release incorrectly stated that the children had been removed and were living with non-relative foster parents. Dkt. 49, p. 3. Counsel corrected this misstatement in her reply.

**B. The COVID-19 Pandemic**

More than 6.5 million people in the United States have tested positive for COVID-19, resulting in over 193,000 deaths.[5] Like many institutions, BOP has struggled to contain the spread of the pandemic among its inmates and staff. Of its 126,754 inmates and 36,000 staff members, 1,930 inmates and 636 staff members have tested positive and still have the illness. 11,476 inmates and 1,045 staff members have tested positive and recovered. 119 inmates and 2 staff members have died.[6]

USP Terre Haute is currently experiencing an uptick in COVID-19 cases. When the Government filed its brief on August 17, 2020, just one inmate at USP Terre Haute had tested positive for the virus. Dkt. 50, p. 1. By the time Mr. Critchlow filed his reply on August 16, 2020, that number had increased to 14. Dkt. 51, p. 4. As of September 16, 2020, 21 inmates at USP Terre Haute are currently positive for COVID-19 and 63 have recovered from the virus, and 21 inmates at adjacent FCI Terre Haute are currently positive and 66 have recovered.[7] Vigo County, where these facilities are located, is currently flagged by the Indiana Department of Health as a COVID-19 hotspot.[8]

## II.
## DISCUSSION

**A. The First Step Act**

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C.

---

[5] https://covid.cdc.gov/covid-data-tracker/#cases_totalcases.
[6] https://www.bop.gov/coronavirus/.
[7] *Id.*
[8] https://www.coronavirus.in.gov/.

§ 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the BOP could file a motion for compassionate release. Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

**B.  Mr. Critchlow's Motion for Release**

Mr. Critchlow argues that his obesity and status as a former smoker increase his risk of severe illness or death from COVID-19 and that these health conditions, as well as the CHINS petition concerning his children in state court, are "extraordinary and compelling" reasons justifying compassionate release. Dkt. 49, pp. 10-18. He further argues that his early release would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 18-21.

In response, the Government contends that Mr. Critchlow is not at an increased risk of severe illness or death from COVID-19 because his obesity is being managed by prison medical staff, he quit smoking in 2017, and he is only 39 years old. Dkt. 50, pp. 15-20. Regarding the CHINS petition, the Government notes that Mr. Critchlow's children are still in their mother's custody and there is no immediate plan for reconciliation with Mr. Critchlow. *Id.* at 20-21. While the Government does not contend that Mr. Critchlow's early release would present a danger to the community, it argues that his early release would be inconsistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a).  *Id.* at 21-24.

1.  Extraordinary and Compelling Reasons

The first question is whether Mr. Critchlow has demonstrated the existence of extraordinary and compelling reasons to justify his early release. Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at

6

least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).

Mr. Critchlow does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to the COVID-19 pandemic and his underlying medical conditions Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

To answer this question, the Court must first address the threshold issue of who determines the qualifications for "extraordinary and compelling" reasons under the catchall provision—the Court or BOP. The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D).

This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction'" under § 3852(c)(1)(A). *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230

7

(JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). This Court has previously followed the majority rule and concluded that district courts may exercise their discretion to determine what qualifies as "extraordinary and compelling" for purposes of the catchall provision. *See United States v. Kirschner*, No. 1:10-cr-203-JPH-MJD-1, dkt. 79 (S.D. Ind. July 15, 2020); *United States v. Quintanilla*, 3:00-cr-25-RLY-MPB, dkt. 72    (S.D. Ind. July 9, 2020).

The Court therfore concludes that the policy statement set forth in Section 1B1.13 is not controlling with respect to a defendant's motion for compassionate release and that district courts may exercise discretion in determining what constitutes "extraordinary and compelling" reasons. Like many other courts, the Court considers Section 1B1.13 for guidance in evaluating whether the facts constitute extraordinary and compelling reasons to modify the sentence under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Young*, 2020 WL 3605025 (C.D. Ill. July 2, 2020); *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases).

Moving now to the merits, the Court finds that Mr. Critchlow has established extraordinary and compelling reasons justifying early release. The COVID-19 pandemic is a serious public health crisis affecting every aspect of society. Most courts have concluded that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr.

17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark*¸ No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020). However, many courts have found that a prisoner may show an "extraordinary and compelling reason" warranting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) by demonstrating that the he is at an increased risk of severe illness from COVID-19 due to preexisting chronic medical conditions. *E.g. United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (granting release based on "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" even though these conditions did not prevent him the prisoner from engaging in most of his daily activities without assistance); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting release based on hypertension, prostate issues, bladder issues, a dental infection and prediabeties); *United States v. Joling*, No. 11-cr-60131-AA, 2020 WL 1903280 (D. Ore. Apr. 17, 2020) (granting compassionate release based on "hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture" and diagnosis of "prostatic adenocarcinoma").

In this case, Mr. Critchlow has at least one underlying health condition—obesity—that increases his risk of severe illness or death from COVID-19. He is also a former cigarette smoker, which the CDC has identified as a factor that may increase his risk of severe illness or death. Although USP Terre Haute has not yet experienced as high a level of infection as some other BOP facilities, the number of positive cases at USP Terre Haute, FCI Terre Haute, and the surrounding community is increasing. Given the events of the last six months and the projections of public

health officials regarding the spread of COVID-19, the Government's suggestion that USP Terre Haute will escape the pandemic without a significant outbreak appears unreasonably optimistic.

The Government argues that Mr. Critchlow is not at a significant risk of severe illness or death because his obesity is being managed by medical staff, he has already quit smoking, and he is only 39 years old. The Court has previously rejected similar arguments from the Government, *see Kirschner*, No. 1:10-cr-203-JPH-MJD-1, dkt. 79 (S.D. Ind. July 15, 2020), and does so again in this case. The CDC Guidelines make no distinction between individuals whose obesity is being managed and those whose obesity is not being managed. Further, it is not clear that Mr. Critchlow's obesity is being *effectively* managed given that he has remained obese throughout his incarceration at USP Terre Haute. The fact that Mr. Critchlow quit smoking in 2017 is unpersuasive given that the CDC Guidelines indicate that both smokers and former smokers may be at an increased risk of severe illness or death from COVID-19. And because the CDC guidelines identify these health conditions as increasing or possibly increasing the risk of severe illness or death at any age, the Government's argument regarding Mr. Critchlow's relative youth is similarly unpersuasive.

Finally, while the CHINS petition concerning Mr. Critchlow's children would not be enough, standing alone, to justify his early release, Mr. Critchlow's domestic responsibilities are not altogether irrelevant. The CHINS petition indicates that his children's physical or mental condition is seriously impaired or seriously endangered as a result of their mother's drug abuse and neglect. Releasing Mr. Critchlow now, rather than in July 2021, would provide him with a meaningful opportunity to reconcile with his children and provide them with additional support before the CHINS factfinding hearing in April 2021.

2. <u>Danger to any Other Person or the Community</u>

The Government does not argue that Mr. Critchlow's early release would pose a danger to the community and has arguably waived the issue. The Court finds that Mr. Critchlow's good behavior during his incarceration at USP Terre Haute indicates that releasing him now, rather than ten months from now, would not pose a danger to another person or to the community. The Court also notes that Mr. Critchlow will be subject to supervised release for the first year, which will act as an additional deterrence to future misconduct.

3. <u>Section 3553(a) Factors</u>

Finally, the Court considers the § 3553(a) factors, including whether they outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence. U.S.S.G. § 1B1.13; *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan, 9, 2020). Focusing on "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant," the Government argues that the § 3553(a) factors do not support early release. Dkt. 50, pp. 22-24.

There is no dispute that the offense conduct was extremely serious. But releasing Mr. Critchlow less than ten months early after he has served the vast majority of his sentence does not diminish the severity of the sentence or send the wrong message. Although Mr. Critchlow has been on the wrong side of the law for much of his adult life, his conduct at USP Terre indicates that he has made significant progress towards reformation. Mr. Critchlow has completed substance abuse treatment, attended various continuing education courses, and completed 5,843 hours of

11

vocational training. Additionally, he has not been charged with any disciplinary violations during this period of incarceration. Given these circumstances, the Court finds that the sentencing factors do not outweigh Mr. Critchlow's extraordinary and compelling reasons justifying early release, and the motion for early release is **granted**.

### III.
### CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Critchlow's sentence of imprisonment, that Mr. Critchlow does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's policy statements.  Therefore, the Court **GRANTS** Mr. Critchlow's Motion for Compassionate Release [36], **ORDERS** that Mr. Critchlow's sentence of imprisonment be reduced to time served as of **September 18**, **2020**, and further **ORDERS** the BOP to release Mr. Critchlow by **4:00 p.m. on September 18, 2020**.

The terms of supervised release imposed in the Judgment of October 23, 2015, *see* dkt. 33, pp. 3-4, remain the same with the addition of the following condition: Upon release, the defendant is further **ORDERED** to comply with any period of quarantine directed by medical staff and/or any state or local health authority.

**SO ORDERED**.

Date: 9/16/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel